THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOE LEONARD, Defendant-Appellant.

First District (5th Division)   No. 79-934

Opinion filed August 29, 1980.

Ralph Ruebner and Susan Bandes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Kathleen Warnick, and Jacqueline Cox, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Following a jury trial, defendant was convicted of armed robbery and sentenced to a term of 6 to 15 years imprisonment. On appeal, he contends his sentence was excessive. We affirm the trial court.

Jessie Curtis testified that on April 2, 1977, at 7:15 p.m. she was working with her niece at a carryout chicken restaurant. About seven young men came in and some placed orders. Defendant was identified by her as being one of these young men. Curtis looked at the men as they stood eight to 10 feet away. After the orders were filled, all but two of the young men left. Defendant stayed and placed a second order but then left, so his order was not prepared. Curtis then left for a few minutes. Defendant returned about 2 minutes after she did and inquired about his order. When she turned to prepare the order, she saw an object come from under his coat at which time he grabbed a 12-year-old boy around the neck. The object appeared to be a gun barrel. Defendant then stated he was going to kill someone. Curtis testified her niece told her that defendant said he was broke and needed some money and would kill someone if he didn't get it. She told her niece to give him the money out of the cash register, whereupon, he took the money and backed out the door.

Curtis, who had seen the defendant once before, described him as tall, skinny, light-skinned, in his late teens or early twenties and wearing a light tan leather coat. She next saw defendant at a lineup where she identified him.

Sherree McNeal, niece of Jessie Curtis, testified that she was cashiering and wrapping orders at the restaurant on the night in question. She was approximately 3 feet from defendant as he placed his order. He placed another order and left. When he returned, he put his arm around a boy's neck with a gun to his head and threatened to hurt someone if he didn't get any money. McNeal put the money from the cash register on the counter where defendant picked it up and backed out the door. She identified him in the lineup.

Defendant testified that he was at home at the time in question. He had not been to the chicken restaurant in approximately 5 months. He had gone to a cousin's house earlier in the day and then went to a pool hall located across from the restaurant with some friends after he left his cousin's home. He left the pool hall at 6 p.m. and walked home where he remained until 8:30 or 8:45 p.m.

He further testified that while waiting for a bus the next day, Officer Michael Cronin asked him and his friend to get into the squad car. He was asked to be in a lineup and he agreed. Defendant denied telling Officer Cronin or Thomas Grapenthien that he wore a brown leather jacket on April 2, 1977, or that he had gone to the restaurant that day to borrow a leather jacket.

Darnell Cross testified for the defense that on April 2, 1977, he and defendant were on their way to his house when they got off the bus. They played some pool, and then walked to defendant's house around 6 p.m. They remained there until 8:30 or 8:45 p.m. They did not go to the restaurant.

On rebuttal, both police officers testified that defendant admitted being at the chicken restaurant the day of the robbery but could not remember the exact time since he was under the influence of cough syrup. The police officers further testified that defendant stated he had on a brown leather jacket while at the restaurant.

Defendant was found guilty of armed robbery and sentenced to a term of 6 to 15 years' imprisonment. The court emphasized that defendant used a gun in a public place which jeopardized everyone's welfare, held a young boy hostage and robbed the women.

OPINION

Defendant's only contention on appeal is that his sentence was excessive. He argues that not only should the penalty fit the offense

*(People v. Honn* (1977), 47 Ill. App. 3d 378, 362 N.E.2d 90), but it must also fit the offender taking into account the possibility of rehabilitation. *People v. Williams* (1972), 7 Ill. App. 3d 733, 288 N.E.2d 636.

Supreme Court Rule 615(b)(4) grants reviewing courts the power to reduce the sentence imposed by the trial court. However, this power is only exercised when there has been an abuse of discretion. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 372 N.E.2d 641.

In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the issue involved the scope of the power of a reviewing court to modify a criminal sentence. The supreme court stated there that the trial court is generally in a better position during trial and at the sentencing hearing to make a sound determination as to the punishment to be imposed than the reviewing court, and further that "the trial judge's decisions in regard to sentencing are entitled to great deference and weight. * * * [A]bsent an abuse of discretion by the trial court a sentence may not be altered upon review." 68 Ill. 2d 149, 154, 368 N.E.2d 882, 883.

In the present case, the trial court determined that defendant had jeopardized the public welfare by the use of the gun in the robbery. He held hostage a young boy in order to force the women in the restaurant to turn over the money in the cash register. It was the court's determination that defendant needed a period of time to rehabilitate himself in prison in order to avoid getting into more trouble upon his release. We, therefore, hold that there was no abuse of discretion in arriving at the decision here and that the sentence was not excessive. *People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182.

The judgment of the trial court is affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.